## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### CENTRAL DIVISION
### AT FRANKFORT

**CIVIL CASE NO. 16-5-WOB-CJS**

**JOYCE LOUISE RODGERS**                                        **PLAINTIFF**

**v.**                             **REPORT AND RECOMMENDATION**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                             **DEFENDANT**

* * * * * * * * * * * *

Plaintiff Joyce Louise Rodgers brings this action under 42 U.S.C. §§ 405(g), challenging Defendant Commissioner's final decision denying her application for benefits under Title II and Title XVI of the Social Security Act.[1]  (R. 1).  This matter has been referred to the undersigned for preparation of a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B).  At issue is whether the Administrative Law Judge (ALJ) erred in finding Plaintiff "not disabled" and therefore not entitled to benefits.  After a thorough review of the administrative record, for the reasons explained below it will be **recommended** that Plaintiff's Motion for Judgment on the Pleadings (R. 19) be **denied**, and the Commissioner's Motion for Summary Judgment (R. 20) be **granted.**

## I.       STANDARD OF REVIEW AND THE ADMINISTRATIVE PROCESS

In reviewing the decision of an ALJ in social security cases, the only issues before the reviewing court are whether the ALJ applied the correct legal standards and whether the decision is

---

[1]The right to court review of the Commissioner's final determination of a claim under Title XVI is provided in 42 U.S.C. § 1383(c)(3), which references § 405(g).

supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Blakley*, 581 F.3d at 406. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id.* (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Thus, even if the evidence could also support another conclusion, the decision of an ALJ must stand if the evidence could reasonably support the conclusion reached. *Id.* (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

In this case, Plaintiff must establish that she is disabled within the meaning of the Social Security Act in order to qualify for benefits. 42 U.S.C. §§ 423(a)(1), 1381 *et seq.* The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Social Security Act requires the Commissioner to follow a five-step analysis when making a determination on a claim of disability. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, a claimant must demonstrate that she is not currently engaged in "substantial gainful activity." *Vance*, 260 F. App'x at 803 (citing

20 C.F.R. §§ 404.1520(b), 416.920(b)).  Second, if the claimant is not engaged in substantial gainful

activity, she must demonstrate that she suffers from a severe impairment. *Id*. at 803-04.  "A 'severe

impairment' is one which 'significantly limits . . . physical or mental ability to do basic work

activities.'" *Id*. at 804 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).  Third, if the claimant is not

performing substantial gainful activity, has a severe impairment that is expected to last for at least

twelve months, and the impairment meets or equals a listed impairment located at 20 C.F.R. part

404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or

work experience. *Id*. (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).  Fourth, if the impairment does

not meet or equal a listed impairment, the claimant must show her impairment prevents her from

doing her past relevant work. *Id*.  Lastly, even if the claimant cannot perform her past relevant work,

she is not disabled if she can perform other work that exists in the national economy. *Id*.  (citing

*Abbott*, 905 F.2d at 923).  Throughout this process, the claimant carries the overall burden of

establishing that she is disabled, but the Commissioner bears the burden of establishing that the

claimant can perform other work existing in the national economy. *Id*.  (quoting *Wilson v. Comm'r*

*of Soc. Sec*., 378 F.3d 541, 548 (6th Cir. 2004)).

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was 50 years old at the time of the ALJ's decision.  Her alleged disability began on

June 1, 2012, when she was 48 years old.  (Administrative Record (A.R.) 39).  Plaintiff has a high

school education.  (*Id.* at 40-41).  Plaintiff has past relevant employment as a home-health

3

aide/companion,[2] an assistant manager at a gas station, a cashier at a truck stop, and an auto parts assembler. (*Id.* at 204, 41-44, 55-58). On her application, Plaintiff asserted the following conditions limit her ability to work: diabetes, back pain, and neck pain. (*Id.* at 197). Plaintiff also testified that she has a torn meniscus and arthritis in her left knee; suffers from peripheral vascular disease and peripheral neuropathy; and has undergone surgeries including a hysterectomy and amputation of her right fifth toe. (*Id.* at 45-52).

Plaintiff testified at the hearing that her pain in her left knee and back affects her ability to work. (A.R. 45). She testified that sitting causes her knee pain and the only way to relieve the pain is to walk. (*Id.* at 48-50). Walking, however, causes her back pain. (*Id.*). Plaintiff explained that, on a good day, she can walk for about 20 to 25 minutes before she needs to sit down due to her back pain. (*Id.* at 50). Plaintiff testified that she can sit for a period of 20 minutes before she needs to stand up due to pain. (*Id.*). Plaintiff also testified that she had a stent put in her left leg because she suffers from peripheral vascular disease and blood clots. (*Id.* at 46). Plaintiff explained that her little toe on her right foot has been amputated and that she recently underwent a hysterectomy. (*Id.* at 46-48). Plaintiff further testified that she suffers from diabetic neuropathy in both of her legs that feels likes she has "needles in [her] feet." (*Id.* at 51-52). Plaintiff explained that she takes Neorontin to ease the pain in her legs but that it makes her feel dizzy and sleepy. (*Id.* at 52). In addition to Neorontin, Plaintiff takes Plavix, aspirin, Vistaril, Zanaflex, Losartan, and Percocets. (*Id.*). Plaintiff testified that she does not take medicine for her diabetes. (*Id.* at 52-53).

---

[2]The Vocational Expert (VE) testified that Plaintiff had worked for several different health care agencies as what Plaintiff referred to as a "care giver." (A.R. 55). The VE explained that, in her opinion, Plaintiff's positions as a care giver fell under two different DOT titles because she performed her previous positions differently. (*Id*. at 55-57). The positions that required Plaintiff to transfer and/or lift patients fell under the DOT title of home-health aide, while the other, less strenuous positions fell under the DOT title of companion. (*Id*.).

On September 25, 2013, Plaintiff filed applications for disability insurance benefits and supplemental security income.  (*Id.* at 17, 173, 179).  These claims were denied initially and again upon reconsideration.  (*Id.* at 17, 65-102).  At Plaintiff's request, a hearing was held before Administrative Law Judge (ALJ) Robert B. Bowling on May 20, 2015.  (*Id*. at 125-26, 35-64).  Plaintiff appeared and testified at the hearing.  (*Id.* at 37-54).  The ALJ also heard testimony from an impartial vocational expert (VE).  (*Id.* at 54-62).  After receiving testimony and reviewing the record, the ALJ issued a written decision on July 30, 2015, finding Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.* at 17-28).

The ALJ used the five-step sequential process to determine that Plaintiff was not disabled.  (*Id.*).  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful employment since June 1, 2012–the alleged onset date of her disability.[3]  (A.R. 19).  At step two, the ALJ determined that Plaintiff had the severe impairments of: obesity and degenerative joint disease.  (*Id.*).  At step three, the ALJ analyzed Plaintiff's impairments and found Plaintiff did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments under the applicable Federal Regulations.  (*Id.* at 21).

At step four, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform medium work, with some limitations.  Specifically, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that claimant has the residual functional capacity to perform medium work.  The claimant can occasionally lift and or carry 50 pounds.  The claimant can frequently lift and or carry 25 pounds.  The claimant can sit, stand and walk for six hours in an eight-hour

---

[3]The ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016.  (A.R. 19).

workday.  The claimant can push and or pull up to the weight limit of medium work.
The claimant can reach overhead with the left upper extremity occasionally.

(*Id.*).

The ALJ heard testimony from an impartial vocational expert (VE) who stated that, based on the RFC provided by the ALJ, Plaintiff could perform her past relevant work as a companion, an assistant manager, a cashier, and a motor vehicle assembler.  (*Id.* at 58).  As to the home-health aide position, the VE testified that Plaintiff could only perform this position as it is classified in the Dictionary of Occupational Titles (DOT) (or as it is normally performed) and not as the claimant had actually performed it.  (*Id.*).  The VE based this opinion on the fact that the home-health aide position is rated in the DOT at the medium exertion level but was performed by Plaintiff at the heavy exertion level. (*Id.* at 55-58).

At the conclusion of the May 20, 2015, hearing, counsel for Plaintiff informed the ALJ that there were additional medical records from U.K. Healthcare regarding Plaintiff's hysterectomy that were not in the record.  (*Id*. at 62-63).  Counsel explained that he had not "been able to get those [medical records] yet."  (*Id*. at 63).  The ALJ advised Plaintiff and counsel that he would keep the record open an additional two weeks to allow Plaintiff to submit the records.

On July 20, 2015, counsel submitted the U.K. Healthcare records which were filed in Plaintiff's record as Exhibits 21F - 25F.  (*Id*. at 825-1281).  On July 30, 2015, the ALJ entered his decision adopting the VE's opinions, and concluding that Plaintiff was not "disabled" for social security purposes.  (*Id*. at 17-28).  It does not appear that the ALJ considered the records contained in Exhibits 21F - 25F in rendering his decision.

On September 3, 2015, Plaintiff appealed the ALJ's decision to the Social Security Appeals Council.  (A.R. 12-13).  On November 10, 2015, the Appeals Council denied Plaintiff's request for

6

review, rendering the ALJ's July 30, 2015, decision denying Plaintiff benefits the final decision of the Commissioner.  (*Id.* at 1-3).  The Appeals Council stated that it had considered the additional evidence submitted by Plaintiff's counsel (Exhibits 21F - 25F) and found that the information does not provide a basis for changing the ALJ's decision.  (*Id.* at 2).  On January 14, 2016, having exhausted her administrative remedies, Plaintiff timely filed a Complaint asserting that the ALJ's decision was not in accordance with the law and was contrary to the evidence.  (R. 1).

Plaintiff has filed a Motion for Judgment on the Pleadings (R. 19), arguing the ALJ erred: in rendering his RFC finding and by positing a defective hypothetical to the VE and misinterpreting the VE's testimony.  Further, Plaintiff asserts that the agency decision should be vacated and remanded to require the agency to assess the U.K. Healthcare medical records contained in Exhibits 21F - 25F.  Each of these arguments is discussed below.

## III.    ANALYSIS

### A.    The ALJ did not err in his RFC determination

Plaintiff sets forth two arguments in support of her claim that the ALJ erred in his RFC finding.  First, Plaintiff argues that the ALJ erred because his RFC determination is not supported by the medical opinion evidence.  (R. 19-1, at 3-4, 7-8).  Second, Plaintiff claims that the ALJ improperly evaluated her subjective complaints of pain in rendering his RFC determination.  (*Id.* at 5-7).

### 1.    The ALJ's RFC determination was supported by medical opinion evidence.

Plaintiff argues that the ALJ erred by finding that she has a residual functional capacity (RFC) of medium-exertional because it is unsupported by the medical opinion evidence.  (R. 19-1,

at 3, 7-8).  Plaintiff further argues that a finding of light-exertional RFC is also inappropriate based on the medical opinion evidence.  (*Id*. at 3-4).  For the reasons below, her arguments fail.

The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC.  *See* 20 C.F.R. § 404.1527(d)(2); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner.").  The Sixth Circuit has recognized that, under the Social Security regulations, "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004).  In other words, the ALJ is charged with evaluating all of the evidence in the record and synthesizing it into a concise RFC.  It is not necessary for the RFC to reflect any specific medical opinion in the record, and the ALJ "does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010).

Here, the ALJ found that Plaintiff had the RFC to perform medium work, with certain limitations.  Specifically, the ALJ found "[t]he claimant can occasionally lift and or carry 50 pounds. The claimant can frequently lift and or carry 25 pounds.  The claimant can sit, stand and walk for six hours in an eight-hour workday.  The claimant can push and or pull up to the weight limit of medium work.  The claimant can reach overhead with the left upper extremity occasionally."  (A.R. 21).  In reaching this conclusion, the ALJ took care to discuss each medical source in the record, and to delineate the weight he accorded to each opinion.  In addition, the ALJ examined the non-medical evidence of record including Plaintiff's testimony regarding her daily activities.

In rendering his RFC determination in this matter, the ALJ accorded great weight to the findings of Dr. William Waltrip.  The ALJ acknowledged Dr. Waltrip's opinion that Plaintiff has chronic back pain with lower extremity radiculopathy and discomfort in her left shoulder.  The ALJ also noted that range of motion testing showed that Plaintiff was limited in flexion and abduction of her left shoulder and was not able to perform flexion and extension of her lumbar spine.  (A.R. 25).  Despite these opinions, however, the ALJ recognized Dr. Waltrip's further findings regarding Plaintiff's abilities and physical condition.  Among these findings, the ALJ noted that Plaintiff had no history of injury to her back or neck; was only moderately limited in her ability to walk and stand, or sit; did not use an assistive device for ambulation; could perform a knee squat; and walked with a normal gait.  (*Id*. at 23-25).  The ALJ also considered Dr. Waltrip's opinion that there was no motor dysfunction, sensory loss, or reflex abnormalities and that Plaintiff should be able to lift objects of 25 to 30 pounds without limitation.  (*Id*. at 25).  According to Dr. Waltrip, Plaintiff had good strength of grip and could perform fine and gross manipulations.  (*Id*.).  Notably, Dr. Waltrip did not impose any pushing or pulling limitations.  The ALJ concluded that Dr. Waltrip gave Plaintiff a thorough physical examination and evaluated her medical history and that his opinion was consistent with the overall medical record and the residual functional capacity finding.  (*Id*.).

The ALJ also cited to the findings of the State Agency Examiners.  (*Id*.).  Specifically, the ALJ made reference to the examiners' findings that Plaintiff could perform light work and was able to lift overhead with the left upper extremity frequently, despite her impairments.  (*Id*.).  The ALJ recognized that the State Agency medical consultants are non-treating, non-examining medical sources, but found that their opinions are internally consistent and well supported by a reasonable explanation and available evidence.  (*Id*.).

Additionally, the ALJ referenced the opinions of the other the medical providers regarding Plaintiff's physical condition.  (*Id*. at 23-24).  In particular, the ALJ noted that both Dr. Richardson and Dr. Allen had opined that Plaintiff's muscle strength was normal for all groups tested and her joints and muscles were unremarkable.  (*Id*. at 24).  Further, the ALJ referenced medical records from Frankfort Regional Medical Center stating that Plaintiff's back had a normal inspection and she had a full range of motion of her back without pain.  (*Id*. at 23).  Similarly, the records from Saint Joseph Hospital provided that Plaintiff had a normal range of motion of her musculoskeletal system and had normal strength.  (*Id*. at 24).

The ALJ gave little weight to Dr. Ann Polluck, who opined that Plaintiff: would need to lie down in excess of the usual breaks afforded in the work day to a normal worker; can stand and/or walk for 30 minutes at one time and sit for 45 minutes at one time; needs a job that will permit her to shift from standing, to sitting, to walking at various intervals; can occasionally lift and/or carry twenty pounds and can frequently lift and/or carry less than ten pounds; and would miss more than four days of work per month.  (*Id*. at 25-26).  As grounds for according this opinion little weight, the ALJ stated, among other things, that Dr. Polluck has not treated Plaintiff on any consistent basis and the restrictions and limitations are not found in her records.  Further, the ALJ reasoned that Dr. Polluck's opinion is not consistent with the overall medical evidence.  (*Id*. at 26).

Plaintiff does not challenge the weight given to the medical opinions.  Instead, Plaintiff argues the ALJ's findings that she is capable of occasionally lifting fifty pounds and can push or pull to the limits of medium work are not supported by the medical opinion evidence in the record.  (*Id*. at 3, 7-8).  Specifically, Plaintiff states "[n]owhere in the discussion of or summary of their respective opinions does the agency decision cite to any aspect that supports the ability to push and

or pull to the weight limit of medium work." (*Id*. at 8). Similarly, Plaintiff contends, "[t]he decision cites nothing by any acceptable medical source that supports the assertion that [Plaintiff] can push and or pull to the limits of medium work." (*Id*.). Plaintiff's arguments are unconvincing for two reasons.

First, as noted by the Commissioner in its brief, Plaintiff misstates the burden of proof. It is a plaintiff's responsibility to present evidence demonstrating that she is disabled. *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While the burden of proof shifts to the Commissioner at step five, plaintiff bears the burden of proof through step four of the procedure, the point at which her RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof). Thus, the burden was on Plaintiff to produce evidence of her impairments; it was not the Commissioner's responsibility to prove that Plaintiff was not disabled or otherwise impaired.

Second, as discussed above, although the medium RFC assigned by the ALJ is not reflective of any specific medical opinion in the record, this is of no error. Again, "[t]he Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC." *Coldiron*, 391 F.3d at 439. Here, the Court thoroughly examined the medical opinions in the record, according Dr. Waltrip's opinion great weight. Although Plaintiff claims that she cannot push and/or pull up to the weight limit of medium work, Plaintiff ignores the fact that Dr. Waltrip's opinion did not include any limitations on her ability to push and/or pull. Further, the ALJ identified and discussed the evidence in the record that supported his finding. In particular, the ALJ cited to Dr. Waltrip's opinion that Plaintiff could walk normally without the assistance of a device for ambulation and was

11

able to lift objects of 25 to 30 pounds without limitation.  Similarly, the ALJ referenced the opinions of both Dr. Allen and Dr. Richardson that Plaintiff's strength was normal and her joints and muscles were unremarkable.  Further, the ALJ relied on records from Saint Joseph Hospital that Plaintiff had a normal range of motion of her musculoskeletal system and had normal strength.  This medical evidence, taken together, supported the ALJ's medium RFC finding.

In addition to the medical opinion evidence, the ALJ considered Plaintiff's testimony regarding her daily activities when rendering his medium RFC finding.  In particular, the ALJ considered Plaintiff's testimony that she drives her boyfriend's son to school each morning, which trip takes about 45 minutes; that she does daily housework, including sweeping and cooking for herself and others; and is able to visit with neighbors and friends.

Based on all of the foregoing, the ALJ found that Plaintiff retained the RFC for a range of medium work, with certain limitations.  The RFC is the most, not the least, a claimant can do despite her impairments.  20 C.F.R. § 404.1545(a).  As stated above, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  Here, although Plaintiff is correct that the RFC assessed by the ALJ is not reflective of any particular medical source, this observation is of no consequence as the RFC is supported by substantial evidence as it is reflective of several medical sources and the record as a whole.[4]  *See Saragas v. Astrue*, No. 6:09-cv-236, 2010 WL 3432207 at *6 (E.D. Ky. Aug. 30, 2010).

### 2. The ALJ did not improperly evaluate Plaintiff's credibility when rendering his RFC determination.

----

[4]As the Court finds that the ALJ's medium-exertional RFC finding was supported by substantial evidence, it need not further address Plaintiff's arguments regarding her alleged inability to perform light work.  This is because a medium RFC finding includes a finding that a plaintiff is capable of performing light work.  *See* 20 C.F.R. § 404.1567(c).

Plaintiff further argues that the ALJ improperly evaluated her subjective complaints of pain in rendering his RFC determination. (R. 19-1, at 5-7). In support of her argument, Plaintiff contends that the ALJ's adverse credibility finding is not supported by substantial evidence. (*Id*.). Plaintiff claims that the ALJ fails to reconcile his reasons for discounting Plaintiff's credibility with her uncontradicted testimony that "pain afflicts her as a consequence of the step-two 'severe' degenerative joint disease." (*Id*. at 6). In particular, Plaintiff argues the ALJ erred when he discounted her credibility based upon her smoking addiction and activities of daily living. (*Id*.).

It is well established that a plaintiff's subjective complaints of pain can support a disability finding if the record contains "objective medical evidence" of a severe medical condition that "can reasonably be expected to produce the alleged disabling pain." *Steagall v. Comm'r of Soc. Sec.,* 596 F. App'x 377, 381 (6th Cir. 2015) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994)). "Even when the record contains this evidence, however, the ALJ may also consider the credibility of the claimant's subjective complaints." *Id*. (citing *Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 475–76 (6th Cir.2003)). An ALJ may discount a claimant's credibility when the ALJ "finds contradictions among the medical reports, claimant's testimony, and other evidence." *Id*. (quoting *Warner v. Comm'r of Soc. Sec*., 375 F.3d 387, 392 (6th Cir. 2004)). An "ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge [his] subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). Further, the ALJ's credibility determinations—when supported by substantial evidence—are entitled to "great weight." *Steagall, 596* F. App'x at 381 (6th Cir. 2015*)* (citing *Cruse v. Comm'r of Soc. Sec*., 502 F.3d 532, 542 (6th Cir. 2007)).

13

Here, in rendering his RFC determination, the ALJ found the record contains objective medical evidence of the existence of impairments that could reasonably be expected to produce the Plaintiff's pain and other symptoms, but found her statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (A.R. 24). In assessing Plaintiff's credibility the ALJ based his determination, in part, on the fact that Plaintiff continued to smoke up to two packs of cigarettes a day, despite her history of heart disease and her doctors' numerous admonitions she stop. (*Id.*). It is not entirely clear to the Court how this observation by the ALJ serves to undermine the credibility of Plaintiff's testimony regarding the pain she suffers due to her degenerative joint disease. Thus, Plaintiff's contention that the ALJ improperly discounted her credibility based upon her smoking addiction seems a reasonable argument. However, any notation by the ALJ in this regard does not undermine his overall credibility assessment because the ALJ provided a number of other appropriate reasons for discounting the Plaintiff's credibility.

Specifically, the ALJ considered Plaintiff's daily activities and the medical opinions of the examining doctors when rendering his credibility determination. In this regard, the ALJ provided:

> The claimant filled out a pain questionnaire in October of 2013. She noted that she was able to wash dishes and do laundry. She could go to the grocery store for household items. She noted she goes to Save a Lot and Dollar General. She was able to visit friends. She indicated she fixes food for herself and others. The claimant testified she takes her boyfriend's son to school every day. She can drive. She can do housework such as sweeping. The claimant alleged she cannot work but she is able to do the above activities and this undermines her credibility.

(A.R. 24).

The ALJ also considered the consistency of Plaintiff's complaints with the medical evidence. In particular, the ALJ found:

> The claimant alleges severe back and knee pain, which makes it hard for her to walk any length of time. However, the majority of the examinations throughout the record,

14

which examined her musculoskeletal system, were normal.  For example, upon examination with Dr. William Waltrip in October of 2013 the claimant's neck was supple.  Range of motion for the neck was done without limitation.  She had no deformity, redness or tenderness of her extremities.  She walked with a normal gait. She had no loss of motor strength and no loss of sensation to fine touch.  She could walk heel to toe and tandem.  She could perform a knee squat.  Her deep tendon reflexes were present and normal.  She could walk on the tip of her toes and her heels.

(*Id*. at 25).

In sum, the Court finds that the ALJ gave sufficient additional reasons, supported by the record, for determining that the Plaintiff's subjective allegations were not entirely credible. Accordingly, the Court finds that the ALJ's overall credibility determination is supported by substantial evidence, and the Plaintiff's contention to the contrary is not well-taken**.**

**B.      The ALJ did not err in his questioning of the vocational expert nor did he misinterpret the vocational expert's testimony.**

Plaintiff argues that "the ALJ carried forward the error relating to medium push/pull when positing the fatally defective hypothetical to the vocational expert." (R. 19-1, at 9).  Plaintiff claims she is entitled to remand because the ALJ's decision depended on vocational opinion evidence that was defective due to a flawed hypothetical.  (*Id*. at 10).  Plaintiff further contends that the ALJ committed error in his finding that Plaintiff could do past work as a home-health aide, as the ALJ "misunderstood clearly expressed opinion evidence by the VE."  (*Id*.).

The regulations permit, but do not require, an ALJ to use the services of a vocational expert at step four to determine whether a claimant, given her RFC, can do her past relevant work.  20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2).  When the ALJ obtains vocational evidence through the testimony of a VE, the hypothetical questions posed to the VE must accurately portray the claimant's physical and mental limitations.  *See Webb*, 368 F.3d at 632; *Varley v. Sec'y of Health & Human*

*Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  It is well established, however, that a hypothetical question need only include those limitations that the ALJ finds credible.  *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Scott v. Comm'r of Soc. Sec.*, No. 1:14-cv-497, 2015 WL 4247168, at *4 (W.D. Mich. July 13, 2015) (hypothetical posed to VE for step 4 determination needed only to include limitations ALJ identified in plaintiff's RFC).

While Plaintiff again argues that the ALJ's RFC finding was unsupported by the evidence, the Court has already considered this argument above and found it unconvincing.  As previously discussed, the ALJ considered the record evidence, Plaintiff's testimony, and the opinions of the medical examiners, and rendered an RFC assessment that included all of the limitations that he found credible.  Furthermore, the record reflects that the ALJ's hypothetical question posed to the VE was consistent with those limitations set forth in the RFC determination.  Thus, the ALJ did not err in his questioning of the VE.

Plaintiff also argues that the ALJ erred in finding that Plaintiff was able to perform her past work as a home-health aide because he "misunderstood" the VE's testimony on that subject.  (R. 19-1, at 9-10).  It appears Plaintiff is referring to the portion of the ALJ's decision in which he states, "[t]he vocational expert testified the claimant has performed past relevant work doing the following: a home health aide (DOT 354.77-014) SVP 3, a *heavy* exertional job, performed at *medium* exertion level by the claimant." (A.R. 26) (emphasis added).  As discussed above, the VE testified that Plaintiff could only perform the position of home-health aide as it is classified in the DOT (as it is normally performed) and not as the claimant had actually performed it.  (*Id.* at 58).  The VE based this opinion on the fact that the home-health aide position is normally performed at the medium exertion level but was performed by Plaintiff at the heavy exertion level.  (*Id.*).

16

While it is true that the ALJ transposes the words "heavy" and "medium" when describing the testimony of the VE, further reading of the ALJ's decision shows that this error was a typographical one rather than a misunderstanding on part of the ALJ.   The ALJ's ultimate decision was rendered based upon an analysis of an accurate description of the VE's testimony:

> In response to a hypothetical question at the hearing that reflected the claimant's residual functional capacity the vocational expert testified that the individual would be able to complete past work listed above as normally and actually performed because the demands of said past work do not exceed the residual functional capacity set forth earlier in this decision, except for the position of home health aide.   The vocational expert testified the claimant could perform this position as normally performed and not as the claimant performed it.   The undersigned accepts this testimony as evidence that the residual functional capacity assessment set forth in this hearing decision does not exceed the exertional and non-exertional demands of this work as generally and actually performed.

(*Id*.).   Thus, the ALJ's decision was not based on a misunderstanding of the VE's testimony and Plaintiff is not entitled to remand on this basis.

### C.      Plaintiff is not entitled to remand for consideration of additional evidence.

Plaintiff argues that her claim for benefits should be remanded for additional proceedings to require the ALJ to assess the nearly 460 pages of medical records contained in Exhibits 21F - 25F (A.R. 825-1281) that were submitted on July 20, 2015, before the ALJ's decision was rendered.   (R. 19-1, at 11-15).   In support of this argument, Plaintiff contends that agency regulatory changes that occurred prior to the date of the ALJ's unfavorable decision required the ALJ to assess any records that came "to his knowledge and possession during the period when this claim was under adjudication."   (*Id*. at 11).   As a result, Plaintiff concludes that the ALJ erred when he did not consider the records and such error warrants remand.   However, review of the record and the applicable law reveals that Plaintiff is not entitled to remand on this basis.

At the conclusion of the May 20, 2015, hearing held in this matter, the ALJ informed Plaintiff and Plaintiff's counsel of their duty to submit all evidence known to them and relevant to whether or not Plaintiff was disabled.  The ALJ inquired if either Plaintiff or counsel were aware of any additional evidence falling within that description.  Counsel stated "[t]he only thing that we don't have is the surgical records for the hysterectomy" from U.K. Healthcare.  Counsel explained that he had not been able to obtain those records prior to the hearing.  The ALJ advised counsel and Plaintiff that he would hold the record open for an additional two weeks to allow counsel to provide those records so they could receive his consideration when rendering his decision.  Counsel thanked the ALJ for the extension and the hearing was closed.  (*Id*. at 62-63).

On July 20, 2015, counsel for Plaintiff sent to the Office of Disability Adjudication and Review five exhibits containing medical records from U.K. Healthcare.  (*Id*. at 825-1281; Exhibits 21F - 25F).  Attached to each of the exhibits is a cover letter briefly describing the records and requesting they be added to Plaintiff's file.  On July 30, 2015, the ALJ issued his decision in this matter denying Plaintiff's claim.  The ALJ does not make any specific reference to the U.K. Healthcare medical records in his decision and the List of Exhibits attached to his decision did not include these records.  As such, it appears that the ALJ did not consider these records when rendering his decision. Plaintiff now argues that the ALJ's failure to consider these records was error. Plaintiff's argument is unconvincing for a number of reasons.

First, at the time of the adjudication of Plaintiff's claim before the ALJ, 20 C.F.R. § 405.331 was the relevant regulation describing the procedures for submitting evidence after the ALJ had conducted a hearing but before a decision was rendered.  Section 405.331 stated, in relevant part:

> (a) When you submit your request for hearing, you should also submit information
> or evidence as required by §§ 404.1512 or 416.912 of this chapter or any summary

18

of the evidence to the administrative law judge.  You must submit any written evidence no later than 5 business days before the date of the scheduled hearing.  If you do not comply with this requirement, the administrative law judge may decline to consider the evidence unless the circumstances described in paragraphs (b) or (c) of this section apply.

. . .

(c) If you miss the deadline described in paragraph (a) of this section and you wish to submit evidence after the hearing and before the hearing decision is issued, the administrative law judge will accept the evidence if you show that there is a reasonable possibility that the evidence, alone or when considered with the other evidence of record, would affect the outcome of your claim, and:

(1) Our action misled you;

(2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or

(3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.

20 C.F.R. § 405.331(a) and (c).

As discussed above, the ALJ advised counsel at the May hearing that he would keep the record open for an additional two weeks to allow Plaintiff an opportunity to file the medical records regarding her hysterectomy.  Despite the ALJ's two-week deadline, counsel for Plaintiff filed Exhibits 21F - 25F containing the additional medical records nearly seven weeks later on July 20, 2015.  Although each of the new exhibits included a cover letter from counsel when submitted, the cover letters do not acknowledge that the records were being submitted after the two-week extension provided by the ALJ.  The letters also do not indicate that there is a reasonable probability that the evidence, alone or when considered with the other evidence, would affect the outcome of Plaintiff's claim.  Even if there were a reasonable probability that the U.K. Healthcare records would have affected the outcome, Plaintiff still fails to show that the administration's action misled her; that she had a physical, mental, educational, or linguistic limitation(s) that prevented her from submitting the evidence earlier; or some other unusual, unexpected, or unavoidable circumstance beyond her control that prevented her from submitting the evidence earlier.  20 C.F.R. § 405.331(c).

Thus, because Plaintiff fails to show that she met the requirements of § 405.331 in submitting her U.K. Healthcare medical records after her hearing had concluded, the ALJ was not required to consider them. *Passafiume v. Comm'r of Soc. Sec.*, 1:12-cv-0795, 2012 WL 5611501 at *9 (N.D. Ohio Nov. 15, 2012) (finding that ALJ did not err by failing to consider a treating physician opinion submitted after the hearing because plaintiff did not establish § 405.331 requirements); *Scates v. Comm'r of Soc. Sec.*, 1:12-cv-408, 2014 WL 1092081 (E.D. Tenn. Mar. 17, 2014) (finding that the ALJ did not err by failing to consider physician's opinion submitted after hearing where plaintiff failed to show that he fell within an exception to § 405.331); *Young v. Colvin*, 3:12-cv-245, 2013 WL 4591554 (E.D. Tenn. Aug. 28, 2013) (finding that ALJ was not required to consider physician opinion submitted after hearing because plaintiff failed to establish the requirements of § 405.331). Plaintiff's argument to the contrary is not well taken.

Further, the Appeals Council has already considered the U.K. Healthcare records contained in Exhibits 21F - 25F in affirming the ALJ's decision. On November 10, 2015, the Appeals Council issued its Notice denying Plaintiff's request for review of the ALJ's July 30, 2015, decision. The same date, the Council also issued an Order acknowledging receipt of Exhibits 21F - 25F. In the Notice, the Council states it considered the Exhibits containing the additional medical records and found that the information "does not provide a basis for changing the Administrative Law Judge's decision." (A.R. 1-2). Accordingly, there is no reason to think that remanding this matter for further administrative proceedings would result in a different outcome.

In her Motion, Plaintiff references the standard for consideration of new evidence set forth in 42 C.F.R. § 405(g), also known as a sentence six remand. To the extent Plaintiff is arguing that

she is entitled to a sentence six remand, her argument also fails.  42 U.S.C. § 405(g) provides, in relevant part:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

In sum, "[a] remand pursuant to sentence six of 42 U.S.C. § 405(g) is appropriate 'only if the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ.'"  *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 509 (6th Cir. 2013) (quoting *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)).  "'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding.'"  *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 647 (6th Cir. 2013) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)).  Evidence is material if "there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence."  *Schmiedebusch*, 536 F. App'x at 647.  And "'[g]ood cause' is demonstrated by 'a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.'"[5]  *Johnson*,

---

[5]Plaintiff appears to argue that the 2015 regulatory revisions to 20 C.F.R. § 404.1512 eliminated the "good cause" requirement.  Specifically, Plaintiff asserts that the amendments to Section 404.1512 requiring a claimant to submit all evidence known to claimant that relates to whether or not the claimant is disabled somehow removed the "good cause" requirement under 42 U.S.C. § 405(g).  Plaintiff's argument is not well taken.  Review of the amendments to which Plaintiff refers reveals nothing suggesting elimination of the good cause requirement for consideration of new and material evidence under 42 U.S.C. § 405(g).  Further, assuming arguendo that the good cause requirement was eliminated, Plaintiff has failed to show the medical records contained within 21F - 25F are material.  Thus, she has not satisfied the other requirements necessary to warrant remand.

535 F. App'x at 509 (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).  The party

seeking a remand bears the burden of showing that these requirements are met. *See Hollon ex rel.*

*Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006)).

Here, Plaintiff has not shown that the medical records contained within Exhibits 21F - 25F

are material.  That is, Plaintiff has not demonstrated that there was a reasonable probability that the

Secretary would have reached a different disposition of her disability claim if presented with the

U.K. Healthcare records.  In fact, Plaintiff does not present any argument to support a finding that

the medical records would have affected the ALJ's decision in this matter.  Moreover, as discussed

above, the Appeals Council considered the records and expressly made the opposite finding: that the

information within the medical records does not provide a basis for changing the ALJ's decision.

Thus, Plaintiff has failed to demonstrate that the materiality prong has been satisfied and she is not

entitled to a sentence-six remand.

## IV.     CONCLUSION AND RECOMMENDATION

As explained above, Plaintiff's arguments lack merit and the ALJ's decision is supported by

substantial evidence.  Accordingly, **IT IS RECOMMENDED** that:

1.      The Commissioner's decision be found to be supported by substantial evidence and

therefore **affirmed**;

2.      Plaintiff's Motion for Judgment on the Pleadings (R. 19) be **denied**;

3.      Defendant's Motion for Summary Judgment (R. 20) be **granted**; and,

4.      Judgment be entered and this matter be **stricken** from the active docket of the Court.

Specific objections to this Report and Recommendation must be filed within fourteen (14)

days of the date of service or further appeal is waived.  28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*,

728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

Signed this 2nd day of March, 2017.

Signed By:

***Candace J. Smith***

**United States Magistrate Judge**

J:\DATA\social security\16-5 Rodgers R&R final.wpd